IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:19-CV-00132-KDB

| | |
|---|---|
| MELINDA FOUST,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREW M. SAUL,<br><br>Defendants. | <u>ORDER</u> |

**THIS MATTER** is before the Court on Plaintiff Melinda Foust's Motion for Summary Judgment (Doc. No. 10) and Defendant's Motion for Summary Judgment (Doc. No. 17). In this action, Plaintiff seeks judicial review of an unfavorable administrative decision denying her application for disability insurance benefits under the Social Security Act (the "Act").

Having reviewed and considered the parties' briefs and exhibits, the administrative record and applicable authority, and for the reasons set forth below, the Court finds this matter should be remanded to allow the ALJ to reconsider and further explain his decision that the claimant is not disabled under the relevant sections of the Act. Accordingly, the Court will **GRANT** Plaintiff's Motion for Summary Judgment, **DENY** Defendant's Motion for Summary Judgement, **REVERSE** the Commissioner's decision, and **REMAND** this matter for further proceedings consistent with this Order.

**I. PROCEDURAL BACKGROUND**

On August 30, 2016, Plaintiff filed an application for a period of disability and disability insurance under Title II of the Act, alleging disability since August 27, 2016 (Tr. 18, 114-120). The claim was initially denied on December 22, 2016 and following that denial Plaintiff filed a

1

written request for a hearing (Tr. 18, 66-75). ALJ B. Lloyd Blair (the "ALJ") held a hearing on June 19, 2018, at which Plaintiff and a vocational expert appeared (Tr. 18, 31-50). On July 31, 2018, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Act (Tr. 18-26). The Appeals Council denied review of the ALJ's decision on August 19, 2019 (Tr. 1). Plaintiff now seeks review of that decision in this Court pursuant to 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process established by the Social Security Administration to determine if Ms. Foust was disabled under the law during the relevant period.[1] At step one, the ALJ found that Ms. Foust had not engaged in substantial gainful activity ("SGA") since her alleged onset date and at step two that she had several medically determinable and severe impairments: fibromyalgia; obstructive sleep apnea ("OSA"); restless leg syndrome; dysthymic disorder; GAD; and panic disorder without agoraphobia (20 CFR 404.1520(c)). (*see* Tr. 20). However, the ALJ found at step three that none of Plaintiff's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (*see* Tr. 21).

The ALJ then determined that Ms. Foust had the residual functional capacity (RFC):

to perform light work, as defined in 20 C.F.R. § 404.1567(b) except she could never use ladders, scaffolds, or ropes. She can occasionally use ramps, stairs, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to vibrations. She cannot

---

[1] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

2

>   use torque, pneumatic, or power tools. She needs simple repetitive tasks. She cannot engage in production line type of work. She cannot engage in team work with the public.

(Tr. 22). The ALJ then found at step four that Plaintiff could not perform her past relevant work (Tr. 25). However, at step five the ALJ found that given Plaintiff's age (35), education (high school), work experience (in skilled, semiskilled and unskilled light work), and RFC there are jobs that exist in significant numbers in the national economy that she could perform, including "Hand packager," "Bench assembly," and "Inspector" (Tr. 25-26). Thus, the ALJ decided that Plaintiff has not been under a disability within the meaning of the Act from the alleged onset date through the date of the decision (Tr. 26).

### III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, ––– U.S. –––, 139 S. Ct. 1148, 1151-52, 203 L.Ed.2d 504 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id*. at 1154 (internal quotation marks and alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla. It

3

Case 5:19-cv-00132-KDB Document 20 Filed 11/23/20 Page 3 of 12

means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Accordingly, this Court does not review a final decision of the Commissioner *de novo*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Shinaberry,* 952 F.3d at 120 (internal citations omitted). *See also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].")

Thus, while the Court must always ensure that proper legal standards are being followed, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id*. (internal quotation marks omitted); *Shinaberry,* 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

4

## IV. DISCUSSION

Plaintiff makes numerous arguments that the ALJ's conclusion that she is not disabled is not supported by substantial evidence and that the ALJ failed to "build an accurate and logical bridge" from the evidence in the record to his unfavorable conclusion. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Although the Court does not concur with all of Plaintiff's criticisms of the ALJ's decision and does not suggest by this remand whether or not Plaintiff should ultimately be found to have been disabled during the relevant period, several points of the ALJ's opinion raise sufficient questions that the Court believes the case should be remanded so that the ALJ may further explain his decision.

Plaintiff's challenge to the ALJ's decision focuses on her argument that the RFC is not adequately supported or explained. The Court (in part) agrees. In crafting a RFC, the ALJ must consider all of the claimant's "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). Also, in performing the RFC assessment, an ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *See Woods*, 888 F.3d at 694 (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p, 61 Fed. Reg. at 34,478)). Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. *Woods*, 888 F.3d at 694.

Plaintiff first complains that the ALJ did not properly evaluate her fibromyalgia, specifically arguing that the ALJ did not fully consider the "fatigue and chronic pain" allegedly caused by her condition. *See* Doc. No. 11 at 6-9. While a recognized medical impairment that the

ALJ found to be severe, the nature of fibromyalgia presents a difficult challenge to the Commissioner because it is often not accompanied by any objective findings that support the claimant's subjective reports of pain and fatigue. *See Adamson v. Astrue*, No. CA 8:06-2901-HMH-BHH, 2008 WL 474222, at *3 (D.S.C. Feb. 19, 2008). Thus, in determining whether a claimant who suffers from fibromyalgia is *disabled* under the Act – which is a different and further conclusion than the finding that the claimant has a severe impairment – the Commissioner must, using all the evidence in the record, judge the credibility and impact of the claimant's subjective claims. So, while Plaintiff is correct that the absence of adverse "objective" findings *alone* should not doom her claim for disability, it is equally correct that an ALJ can and should consider all of a claimant's objective medical findings – which here included a lack of neurological deficits, an ability to complete various tasks with no difficulty and other "normal" findings – in reaching an ultimate assessment of the claimant's RFC.[2]

In this case, the ALJ found that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms … the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …." Tr. at 23. In support of this finding, the ALJ noted the lack of objective medical findings supporting her complaints of

---

[2] Indeed, context and a careful evaluation of all the evidence matters a great deal in evaluating a claimant's subjective complaints. For example, Plaintiff suggests that in addition to pain medication, "physical therapy, moist heat, aerobic exercise, relaxation, and stress reduction" are the treatment plan for fibromyalgia and that she has tried massage, hot tub, yoga and Pilates among other remedies. Of course, standing alone, such treatments might be similarly suggested in an advertisement for a spa or a health club. In other words, it is not just permissible but critically important for the Commissioner to be allowed to consider the full picture of Plaintiff's circumstances, including findings that may be inconsistent with a claimant's subjective reports of pain.

pain. Also, the ALJ relied on evidence that Plaintiff's "treatment has generally been limited and conservative" and her testimony that she is "not seeing a psychiatrist, therapist or counselor." Tr. at 24.³ Nevertheless, and with due regard for the Court's limited role in reviewing the Commissioner's decision, the Court shares Plaintiff's concern that the ALJ failed to fully explain how Plaintiff would be able to participate in full-time work as described in the RFC given her reports of pain and fatigue.

In particular, the ALJ's decision does not discuss in any detail Plaintiff's limited activities beyond saying that she is able to drive and lives with her fiancé and 5 year old daughter. *See Eller v. Colvin*, No. 1:14CV493, 2015 U.S. Dist. LEXIS 96030, at *12-13 (M.D.N.C. July 22, 2015) ("[T]he nature of fibromyalgia means that a patient's ability to perform certain tasks or postural maneuvers on a given day does not necessarily reflect an ability to perform those tasks and maneuvers on a sustained basis."). For example, the ALJ's decision does not discuss the testimony that Plaintiff stays home most of the time, can do light chores with multiple rests, watches TV and tries to do "little things" with her daughter such as playing games, coloring, or sitting outside. Also, she testified that she tries to cook, but can only make sandwiches or frozen meals without assistance. She can do laundry, a little gardening on good days, goes shopping but not alone, and has visitors who come to her house. She gets help from her fiancé, mother, and neighbors to feed, dress, and bathe her daughter. *See* Tr. 42-43, 139-44.

---

³ Plaintiff also criticizes the fact that the ALJ took a "negative inference" from the fact that her medical provider had not placed any restrictions on Plaintiff's activities. Again, although the absence of such restrictions is not determinative, it is a fact that the ALJ may consider as part of his review of all the evidence. While a summary statement from a physician that a claimant is or is not "disabled" or "able to work" is not considered a medical opinion and is an opinion on an issue reserved to the Commissioner, 20 C.F.R. §§ 404.1527(d), 416.927(d), the medical provider's opinion on specific functional limitations (or here the absence of such limitations) may be considered.

The extent to which this evidence impacts the ALJ's decision on whether Plaintiff is disabled is, of course, up to him in the first instance and may in fact have already been considered. But, in any event, the ALJ's written decision does not explain if and how he considered the evidence and he should do so on remand. *See Adamson*, No. CA 8:06-2901-HMH-BHH, 2008 WL 474222, at *4 (finding substantial evidence to support Commissioner's assessment of plaintiff's credibility and finding that plaintiff's activities and circumstances were inconsistent with the level of her subjective complaints of pain).

Further, the ALJ substantially discounts the testimony of Plaintiff's fiancé, who lives with her, finding that it has "limited weight" because "he is not an acceptable medical source." Plaintiff's fiancé testified that he has observed that Plaintiff "has gotten worse over time." He says that he has to help her more and more each day because she has a hard time doing daily things like cooking, cleaning, lifting, shopping, doing personal care, and yard work. He also says that she has difficulty sleeping because she is always in pain. Tr. 152-59. As the ALJ noted in his opinion, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." Tr. 22. While it is plainly not "medical evidence," the Plaintiff's fiancé's testimony is "other evidence" that should have been fairly considered and not disregarded simply because Plaintiff's fiancé is not a medical provider.

In sum, it will be up to the Commissioner to determine if Plaintiff's ability to perform daily activities is or is not inconsistent with a claim of disability. *See, e.g., Totten v. Califano*, 624 F.2d 10, 12 (4th Cir. 1980). However, on remand the ALJ must explain how Plaintiff's activities relate to her ability to perform those or similar functions for a full workday. *See Brown v. Comm'r of*

8

*Soc. Sec.*, 873 F.3d 251, 263 (4th Cir. 2017); *Mascio*, 780 F.3d at 636-37. In other words, the ALJ must consider the *type* of activities a claimant can perform as well as the *extent* to which she can perform them. *Brown*, 873 F.3d at 263.

In addition to these arguments, Plaintiff contends that the ALJ did not sufficiently explain how the RFC reflected his finding that Plaintiff had a moderate limitation in "concentrating, persisting, or maintaining pace." *See* Tr. 21.[4] The RFC limits Plaintiff to "simple repetitive tasks" and further states that "[s]he cannot engage in production line type of work." However, an ALJ cannot summarily "account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work," because "the ability to perform simple tasks differs from the ability to stay on task." *Mascio*, 780 F.3d at 638.

In response to this argument, the Commissioner cites to the Court the recent case of *Shinaberry v. Saul* in which the Fourth Circuit held that there is no "categorical" obligation for an RFC to specifically include a limitation in "concentration, persistence or pace" if one has been found so long as the ALJ explains "why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation" in the claimant's RFC. *Shinaberry*, 952 F.3d at 120–21. "For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would [be] appropriate to exclude it from the hypothetical tendered to the vocational expert." *Id*.[5]

---

[4] In making this determination, the ALJ stated that Plaintiff testified "that she does not finish what she starts and can pay attention 5-10 minutes (3E/6)," but also noted her ability to name cities, famous people, and current events in a consultative examination and that she had normal mood and affect during treatment. Tr. 21.

[5] In *Shinaberry*, the Court noted that "our sister circuits [do not] impose such a per se rule. '[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such

In *Shinaberry,* the court affirmed the District Court's decision that the ALJ had "sufficiently explained why the mental limitation to simple, routine, and repetitive tasks accounted for Shinaberry's borderline intellectual disability and her moderate limitations in her concentration, persistence or pace," distinguishing *Mascio* on the grounds that in *Mascio*:

> the ALJ "ignor[ed] (without explanation) Mascio's moderate limitation in her ability to maintain her concentration, persistence, or pace" when he conducted the function-by-function analysis and "said nothing about Mascio's mental limitations" in the hypothetical posed to the vocational expert. "[B]ecause the ALJ ... gave no explanation" for these omissions, "a remand [was] in order."

(internal citations omitted). So, the absence of a specific limitation in the RFC related to the mental limitation concerning "concentration, persistence or pace" is not, standing alone, an indication of error.

However, the Court finds that the ALJ's discussion of the moderate mental limitation of "concentration, persistence and pace" in this case, while not omitted entirely, is closer to the facts in *Mascio* than *Shinaberry*. *See also Thomas v. Berryhill*, 916 F.3d 307, 311–12 (4th Cir. 2019), *as amended* (Feb. 22, 2019) (ALJ drew no explicit conclusions about how plaintiff's mental limitations affect her ability to perform job-related tasks for a full workday). While the ALJ did discuss in some detail his view that Plaintiff's "moderate limitation" should be considered less impactful because of her otherwise normal psychological evaluations and lack of ongoing mental

---

limitations.' *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). Hypothetical questions can also 'adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.' *Id.* 'The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case.' *Biestek*, 139 S. Ct. at 1157; *see also Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017) (rejecting argument that remand was required under *Mascio* because the ALJ failed to specifically account for claimant's moderate difficulties with regard to concentration, persistence and pace, because more detailed medical findings provided substantial support for the RFC limitations)."

10

treatment, the ALJ's opinion does not, for example, specifically address how Plaintiff's professed inability to focus on tasks for more than 5-10 minutes relates to her RFC. Indeed, it may be that the RFC limitation that Plaintiff "cannot engage in production line type of work"[6] relates to this mental limitation by giving Plaintiff more flexibility to avoid a fast pace or the need to consistently focus on her tasks. Accordingly, the Court will remand this action to allow the ALJ to more clearly explain how the RFC reflects Plaintiff's moderate limitation in "concentration, persistence and pace," whether or not a specific limitation in that regard is included in the RFC.

Finally, Plaintiff argues that the Court should find error in the RFC based on an allegedly insufficient discussion of Plaintiff's sleep apnea. The Court declines to find error in this regard, primarily because it appears that Plaintiff was still in the process of obtaining treatment for this condition, and Plaintiff did not complain of any significant ongoing problems. However, the Court notes that on remand the ALJ will have an opportunity to further explain his reasoning with respect to Plaintiff's sleep apnea if that is warranted by the evidence presented.

In summary, the Court will remand this matter to the Commissioner for further proceedings for the reasons discussed above. Again, to be clear, by ordering remand pursuant to sentence four of 42 U.S.C. § 405(g), the Court does not forecast a decision on the merits of Ms. Foust's application for disability benefits. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017). "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action'

---

[6] Although the Court does not fully share Plaintiff's concern that this limitation is so ambiguous that it is "impossible" to assess whether the limitation is supported by substantial evidence, the ALJ should also clarify this limitation on remand. *See Thomas v. Berryhill*, 916 F.3d 307, 311–12 (4th Cir. 2019), <u>as amended</u> (Feb. 22, 2019) (While "the ALJ stated that Thomas could not perform work 'requiring a production rate or demand pace,' she did not give us enough information to understand what those terms mean.").

11

seeking judicial review of the Secretary's final decision." *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993) (alternation in original) (emphasis omitted) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 624-25 (1990)).

## V. ORDER

Plaintiff's Motion for Summary Judgment (Doc. No. 10) is **GRANTED**; Defendant's Motion for Summary Judgment (Doc. No. 17) is **DENIED**; and the Commissioner's decision is **REVERSED.** This matter is **REMANDED** for a new hearing pursuant to Sentence Four of 42 U.S.C. § 405(g).[7]

**SO ORDERED ADJUDGED AND DECREED**.

Signed: November 23, 2020

Kenneth D. Bell
United States District Judge

---

[7] Sentence Four authorizes "a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." *Sullivan*, 496 U.S. 617, 625 (1990).